OPINION OF THE COURT
Arlene D. Goldberg, J.
The following sets forth the reasons for this court’s order denying the defendants’ motions for dismissal and transfer of the criminal action to the Family Court.
The defendants were arrested on October 20, 1993 and charged under Penal Law § 260.10 (1) with endangering the welfare of a child — their infant daughter, Kayle.
The relevant portion of the criminal court complaint reads as follows:
"Deponent [Detective Robert Fox] is informed by Elizabeth Watkins, M.D. of Saint Luke’s Hospital that she examined Kayle A., a child, 56 days old on September 5, 6, 7, 1993 and that she observed that Kayle A. had a broken right arm, eight broken ribs, two fractured legs (femurs), two fractured lower legs (tibias), two fractured ankles (distal tibia) a fractured wrist (radius) and a fractured ulna (arm). Deponent is further informed by Dr. Watkins that x-rays reveal that the injuries occurred at various times, from when the child was one week old until the child was brought to Saint Luke’s Hospital on September 5, 1993.
"Deponent is informed by both defendants that the child Kayle A. belongs to them, that the child was in their custody and control from one week after her birth until September 5, 1993 and that they do not know how or when the injuries *671 occurred. Defendants both stated that they do not believe medical evidence indicating their child was injured.”
On October 22, 1993, Dr. Watkins signed a corroborating affidavit which converted the complaint into an information. It contains the following addendum: "of the 8 rib fractures, 6 have signs of healing approximately 14-21 days and 2 with more recent fractures. There was a transverse mid-shaft fracture of both bones of the right forearm. In addition, there are fractures of the growth ends of both distal femurs, both proximal tibias and left distal tibia — all typical of inflicted injury. Left distal femur and left distal tibia are more recent.” (Emphasis supplied.)
Approximately five weeks before the commencement of the criminal action, a child protective proceeding was initiated in the Family Court, New York County, pursuant to article 10 of the Family Court Act, by the filing of a petition alleging that Kayle A. was abused and neglected by her parents, the defendants herein, based on the above-described injuries which they have failed to adequately explain.
By virtue of an order of the Family Court, dated September 13, 1993, Kayle A. has been removed from the custody and control of the defendants,* and is now in kinship foster care. The defendants have been permitted limited, supervised visits with her. The abuse/neglect petition is currently pending in the Family Court.
On behalf of both defendants, nearly identical motions have been submitted to this court requesting orders dismissing the criminal action and transferring the complaint to the Family Court, pursuant to CPL 210.45 and section 1014 (b) of the Family Court Act.
In substance, defendants contend that the criminal action is unnecessary and duplicative in light of the existing Family Court proceedings. They maintain that the Family Court’s processes, which could result in terminating their parental rights, are sufficient and appropriate for resolving the allegations made against them.
The People have filed a response in opposition to the motion citing both procedural and substantive grounds for continuing the prosecution in the Criminal Court.
Family Court Act § 1014 (b) provides, in pertinent part, as *672 follows: "Any criminal complaint charging facts amounting to abuse or neglect under this article may be transferred by the criminal court in which the complaint was made to the family court in which the criminal court is located, unless the family court has transferred the proceeding to the criminal court. The family court shall then, upon a hearing, determine what further action is appropriate.”
With respect to the procedural issue, the prosecution, citing People v Edwards (101 MisC 2d 747 [Crim Ct, NY County 1979]) and the Practice Commentary (Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 1014 [b], at 294), argues that the criminal court’s power to transfer is limited to "complaints” and terminates upon the filing of an indictment or an information.
This court does not agree that this interpretation is consistent with the purposes of the statute. The court, therefore, rejects this limitation and defers to the decision in People v Harrington (131 Misc 2d 1017, 1018 [Schoharie County Ct 1986]), in which a transfer order was made after indictment on the ground that "the words 'any criminal complaint’ as used in Family Court Act § 1014 (b) should be read more broadly so as to facilitate the transfer of appropriate cases to the Family Court.”
Having determined that the conversion of the complaint into an information does not foreclose granting the relief defendants seek, the substantive issue to be decided is whether this court should retain jurisdiction over a prosecution that arises from factual allegations which are the subject of a pending Family Court proceeding. In making this determination, the court must evaluate whether the processes of the Family Court are sufficient and appropriate to remove the need for criminal prosecution, or, conversely, whether criminal court action is needed.
At the outset, it is important to note that the purpose of a Family Court article 10 proceeding is to protect children from injury or mistreatment and to help safeguard their physical, mental and emotional well-being (see, Family Ct Act § 1011; People v Kenyon, 46 AD2d 409, 412). Such proceedings are civil in nature (People v Smith, 62 NY2d 306, 311) and are to be clearly distinguished in purpose and intent from criminal actions (see, Matter of Maureen G., 103 Misc 2d 109, 113 [Fam Ct, Richmond County 1980]) which are designed to punish those responsible for causing harm to the child (see, People v Smith, supra, at 315).
*673 In support of their motions, defendants emphasize that article 10 embodies the State’s basic nonpunitive response to child abuse and neglect, and establishes a preference (if not a presumption) against criminal court action. (See, Besharov, Practice Commentary, op. cit., at 291, 297.) Notwithstanding this, the statute specifically provides that "[n]othing in this article shall be interpreted to preclude concurrent proceedings in the family court and a criminal court.” (Family Ct Act § 1014 [c].)
The suggested guidelines to be used in deciding a transfer motion are taken from CPL 210.43, which establishes criteria for removing a juvenile offender to the Family Court. "Transposing these considerations to child protective proceedings,” five major factors are identified for determining when criminal court action is needed (Besharov, Practice Commentary, op. cit., at 298). "First, the degree of actual harm to the child. Certainly, homicides and other serious physical or sexual assaults raise a strong — but rebuttable — presumption in favor of the need for criminal prosecution * * * Second, the parent’s intent can be a strong indicator of the need for criminal prosecution * * * Third, the prosecutive merit of the case * * * Fourth, the likelihood of successful rehabilitation through Family Court services * * * [Fifth, the impact of community interests and pressures].” (See, Besharov, Practice Commentary, op. cit., at 297-299.)
Applying these factors to the case at hand demonstrates that the intervention of the criminal process is an appropriate and necessary response to the allegations made against these defendants.
The medical findings by Dr. Watkins show that infant Kayle A., over the course of her first 56 days of life, has suffered unspeakable physical injuries. The nature of these injuries and the manner in which they were allegedly inflicted, by extreme twisting, pulling and/or pressure, demand the criminal prosecution of these defendants. Punitive sanctions are particularly appropriate where injuries of this enormity show, at the very least, a reckless, if not intentional, disregard for the physical well-being of an infant child.
With respect to the issue of prosecutive merit, it is significant to note that neither defendant, in their respective moving papers, disputes the admission attributed to both, that they had custody and control of the child from one week after her birth to the date she was brought to St. Luke’s Hospital. *674 While the defendants allude to the existence of reports showing that others had access to the child, and to medical records of three postnatal examinations which failed to reveal any sign of physical injury, they have declined to produce same for the court’s inspection.
Even assuming the accuracy of these contentions, the medical findings by Dr. Watkins, together with the defendants’ admission as to custody and control, support the prosecution of this case.
The merit of this prosecution is further enhanced by additional statements made by both defendants regarding the arm injury which prompted the visit to St. Luke’s Hospital. Specifically, defendant Leonel A. has admitted to jerking his daughter’s arm while giving her a bath on the previous day. While he assertedly did this to prevent the child from slipping down into the water, the medical evidence shows that the force used broke the infant’s arm. Defendant Christina L.’s statements establish that defendant Leonel A. told her of the incident and his fear that something was wrong with the baby. Notably, neither parent sought any medical assistance for their eight-week-old daughter until the following afternoon, when defendant Christina L. brought her to the hospital.
In light of the fact that neither of the defendants will even concede that there is medical proof that their child was injured, it is doubtful that they will obtain any benefit from Family Court services aimed at restoring and strengthening the parental relationship. But, even if rehabilitation can be achieved, sufficient grounds still exist for fixing criminal responsibility for the harm done.
This court is also not persuaded that the potential termination of defendants’ parental rights through the Family Court’s processes constitutes an adequate response to the serious, ongoing abuse involved in this case. Accordingly, the allegations against defendants, if proven, require additional sanctions unavailable to the Family Court.
Lastly, it is the opinion of this court that the interests of the public are best served when the community is made aware that parental abuse of infant children, even to the degree where death or permanent disability does not ensue, is nevertheless criminal behavior that will be prosecuted.
Accordingly, defendants’ motions for dismissal and transfer were denied.

 The child was initially removed from the defendants’ custody without court order on September 10, 1993, pursuant to Family Court Act § 1024.