OPINION OF THE COURT
Nicholas Colabella, J.
Motion by defendants for summary judgment dismissing the complaint and for partial summary judgment on their counterclaims directing the plaintiff to file monthly and annual reports as required by Public Health Law § 2807-d (7) (a) and cross motion by plaintiff for summary judgment in its favor on its complaint and to dismiss defendants’ counterclaims are decided as follows:
The plaintiff Miriam Osborn Memorial Home Association (hereinafter Osborn Memorial), a not-for-profit corporation, is the owner and operator of the Osborn Retirement Community, a nursing home licensed under article 28 of the Public Health Law. Plaintiff commenced the present action in February 1993 seeking a judgment (1) declaring Public Health Law § 2807-d, which imposes an assessment on the gross receipts of certain health care facilities, unlawful and unconstitutional as applied to it, (2) declaring the assessment imposed by Public Health Law § 2807-d constitutes a tax, (3) declaring it not liable for the assessment imposed by Public Health Law § 2807-d, and (4) enjoining the defendants from collecting the assessment or otherwise enforcing Public Health Law § 2807-d against it. Plaintiff claims that the statute violates its substantive due process rights, denies it equal protection, constitutes an unconstitutional taking without just compensation, violates 42 USC § 1983 and unlawfully imposes a franchise tax upon it. The defendants interposed two counterclaims seeking an order directing plaintiff to comply with the reporting requirements of Public Health Law § 2807-d and to pay the assessment imposed by the statute.
The defendants now move for summary judgment dismissing the complaint and for partial summary judgment on their counterclaims directing the plaintiff to comply with the reporting requirements of Public Health Law § 2807-d. The defendants contend that the statute does not violate the plaintiff’s due process rights, deprive the plaintiff of equal protection of the law, result in an unconstitutional taking without just compensation, violate 42 USC § 1983, or impose a franchise *881 tax. Specifically, the defendants contend that the statute is a revenue-raising measure rationally related to the legislative objective of eliminating the State deficit, a legitimate State interest.
In response, the plaintiff cross-moves for summary judgment in its favor on its complaint and the defendants’ counterclaims and for an order (1) declaring Public Health Law § 2807-d, as applied to it, unconstitutional, unlawful, null and void, (2) declaring it not responsible for the submission of reports or the payment of assessments pursuant to the statute, and (3) enjoining the defendants from collecting the assessments from it or otherwise enforcing the statute against it. The plaintiff concedes that no triable questions of fact exist and that the questions of law raised by the parties should be adjudicated upon these motions.
Public Health Law § 2807-d, which became effective on January 1, 1991 (L 1990, ch 938), provides that "[h]ospitals, as defined in this article * * * are charged assessments on their gross receipts received from all patient care services and other operating income, less personal needs allowances and refunds, on a cash basis in the percentage amounts and for the periods specified in subdivision two of this section” (Public Health Law § 2807-d [1] [a]). Initially, the statute provided for an assessment on residential health care facilities of 0.6% of gross receipts from patient care and all other operating income (Public Health Law § 2807-d [2] [former (b)]). When enacted, the only exemption provided for by the statute was for voluntary general hospitals experiencing severe fiscal hardship because of insufficient resources to finance losses from bad debts and the costs of charity care (Public Health Law § 2807-d [former (1)]). Pursuant to the statute all facilities are required to submit quarterly and certified annual reports "on a cash basis of actual gross receipts received from all patient care services and operating income” (Public Health Law § 2807-d [7] [a]). The statute also authorizes the Commissioner of the Department of Health to recoup any unpaid assessments from third-party payments owed to the delinquent facility by the State, Empire Blue Cross and Blue Shield and Health Maintenance Organizations (Public Health Law § 2807-d [6] [a]-[c]).
In 1992, the statute was amended (L 1992, ch 41), in relevant part, by adding an additional 1.2% assessment on residential health care facilities (Public Health Law § 2807-d [2] [b] [ii]) and additional exemptions for "voluntary nonprofit hospitals totally financed by charitable contributions or by the income *882 thereon dedicated to free care of low income patients” and "any facility dedicated solely to the care of police, firefighters, volunteer firefighters, and emergency service personnel” (Public Health Law § 2807-d [1] [b] [ii], [iii]). The 1992 amendment also provided that the additional 1.2% assessment on residential health care facilities was a reimbursable cost for Medicaid program purposes and would be reflected in the facilities’ Medicaid rate (Public Health Law § 2807-d [10] [b]). The 1992 amendments became effective April 2, 1992.
Insofar as the plaintiff commenced the present action on or about February 5, 1993, the present action cannot be deemed to challenge the amendments to the statute made after that date. Accordingly, this court need only consider the plaintiff’s claims with respect to the statute as it existed between January 1, 1991 and February 5, 1993.
The plaintiff first contends that Public Health Law § 2807-d violates its right to due process insofar as the application of the statute to it does not further the legislative objective of the statute. The plaintiff contends that the plain meaning of the statute, the legislative history, alleged admissions by the defendants and the lack of an enforcement mechanism other than the recoupment of certain third-party payments establish that the legislative objective of the statute was to achieve savings in the Medicaid program without reducing Medicaid reimbursement rates to health care facilities by taxing health care facilities who participate in the Medicaid program. The plaintiff contends that the statute, as applied to it, does not further this legislative goal insofar as it does not participate in the Medicaid program and the statute creates an incentive for it to join the Medicaid program in order to receive the benefits of the statute, including the absence of Medicaid reimbursement rate reductions and reimbursement via Medicaid payments of the additional 1.2% assessment. Thus, the plaintiff contends that the application and enforcement of the statute against it, as a health care provider who does not participate in the Medicaid program, is arbitrary and capricious and violates its right to due process.
Initially, this court notes that a legislative enactment is deemed to be constitutional until the party challenging the statute has satisfied the court to the contrary (Health Ins. Assn. v Harnett, 44 NY2d 302, 310). Legislation satisfies the requirements of substantive due process if it is reasonably related to a legitimate governmental objective (Village of Belle Terre v Boraas, 416 US 1). Furthermore, a statute which is *883 enacted in the exercise of the taxing power for the purpose of raising revenues violates the Due Process Clause "only if the act be so arbitrary as to compel the conclusion that it does not involve an exertion of the taxing power, but constitutes, in substance and effect, the direct exertion of a different and forbidden power, as, for example, the confiscation of property.” (Magnano Co. v Hamilton, 292 US 40, 44; see also, Matter of Ames Volkswagen v State Tax Commn., 47 NY2d 345, 348-349; Shapiro v City of New York, 32 NY2d 96, 102, appeal dismissed 414 US 804.) "The Legislature has nearly unconstrained authority in the design of taxing measures unless they are utterly unreasonable or arbitrary” (Matter of Ames Volkswagen v State Tax Commn., supra, at 349).
Contrary to the plaintiff’s contention, the legislative history establishes that the legislative objective of the statute was the reduction of the State budget deficit, a legitimate governmental objective. Although the legislative bill containing the proposed amendment to the Public Health Law, which eventually became Public Health Law § 2807-d, was presented as an alternative to the Governor’s proposed reductions in State Medicaid spending, it was nonetheless introduced to address the State budget deficit. Further, neither the plain language of the statute, nor the conduct of the Department of Health in its implementation of the statute, supports the plaintiffs contention that the Legislature only intended the statute to apply to health care facilities who participate in the Medicaid program. The statute encompasses all "hospitals” as defined by article 28 of the Public Health Law, which includes nursing homes and does not make a distinction between health care facilities based on their participation in the Medicaid program (Public Health Law § 2801 [1]). Nor does the statute provide an exemption for health care facilities who do not participate in the Medicaid program (McKinney’s Cons Laws of NY, Book 1, Statutes § 240).
The plaintiffs contention that the Legislature did not intend the statute to apply to it, since the statute does not provide the Department of Health with any method to enforce the assessment as against it, is also without merit. The only enforcement provisions of the statute provide that the Commissioner of the Department of Health "may” collect deficiencies in final payments and, in certain instances, deficiencies in monthly payments pursuant to paragraph (c) of subdivision (6) (Public Health Law § 2807-d [6] [a], [b]; [7] [e]). Public Health Law § 2807-d (6) (c), in turn, commands officials of the State, officials *884 of Blue Cross and Blue Shield and officials of Health Maintenance Organizations, upon notice from the Commissioner of Health, to withhold payment to be made to the delinquent hospital in the amount of the deficiency and to pay the Commissioner, or his designee, the amount withheld. Insofar as the statute merely permits and does not command the Department of Health to collect deficiencies from third-party payments, the statute cannot be interpreted to limit the Department of Health to this method of enforcement. The cases relied upon by the plaintiff wherein the courts determined that the inclusion of certain enforcement provisions in a statute excluded all other methods of enforcement are distinguishable from the present case, since the statutes analyzed therein provided for comprehensive, specific and elaborate enforcement provisions (cf., Transamerica Mtge. Advisors v Lewis, 444 US 11; Fox v Reich & Tang, 692 F2d 250 [2d Cir], affd sub nom. Daily Income Fund v Fox, 464 US 523; Orlando Contr. Corp. v Consolidated Edison Co., 129 Misc 2d 1077, affd 131 AD2d 827). Therefore, although the Department of Health cannot collect plaintiff’s deficiency through the withholding of third-party payments insofar as the plaintiff does not receive payments from the State, Blue Cross and Blue Shield, or Health Maintenance Organizations, the Department of Health is not limited to that method of enforcement.
In view of the foregoing, this court finds that Public Health Law § 2807-d, as applied to the plaintiff, furthers the legislative objective of the statute and does not offend the Due Process Clause.
Next, the plaintiff contends that the statute violates the Equal Protection Clause of the US Constitution 14th Amendment and the New York Constitution by exempting nursing homes similarly situated to it. "Taxing statutes, like other social and economic legislation that neither classify on the basis of a suspect class nor impair a fundamental right, must be upheld if the challenged classification is rationally related to achievement of a legitimate State purpose” (Trump v Chu, 65 NY2d 20, 25, appeal dismissed 474 US 915). The Legislature has "large leeway in making classifications and drawing lines which in [its] judgment produce [a] reasonable system[ ] of taxation” (Lehnhausen v Lake Shore Auto Parts Co., 410 US 356, 359). Thus, the Equal Protection Clause does not prevent the Legislature from treating one class of individuals or entities differently from others as long as the different tax treatment is not "palpably arbitrary” and does not amount to "invidious *885 discrimination” (Trump v Chu, supra, at 25; Arnot-Ogden Mem. Hosp. v Axelrod, 129 AD2d 103, 112, appeal dismissed 70 NY2d 795). The burden is on the party challenging the legislative arrangement to negate every conceivable rational basis which might support it (Trump v Chu, supra; Arnot-Ogden Mem. Hosp. v Axelrod, supra, at 112). Here, the plaintiff has failed to meet that burden.
Contrary to the plaintiff’s contention, it is not similarly situated to certain nursing homes which are exempt from the assessment under the two exemptions added to the statute by amendment in 1992. Unlike the nursing homes which are exempt as nonprofit hospitals totally financed by charitable contributions and dedicated solely to the care of low-income patients, the plaintiff receives private payment from its patients and is not solely dedicated to the care of low-income patients. The plaintiff does not challenge the exemption of such nursing homes as failing to be rationally related to a legitimate State objective. Moreover, the plaintiff is not similarly situated to a certain nursing home which is exempt from the assessment because it provides care only for firefighters, since the plaintiff does not care solely for police, firefighters or emergency personnel. This court finds that the exemption for facilities who provide care solely for police, firefighters and emergency personnel is rationally related to legitimate State objectives, namely the recognition of the public service rendered by the police, firefighters and emergency personnel and the encouragement of health care for those who risk their lives for the public.
The plaintiff’s contention that the Department of Health is selectively enforcing the statute against it in violation of the Equal Protection Clause is also without merit. Although the Department of Health has not enforced the assessment against three nursing homes which were not exempt from the assessment prior to the 1992 amendment, those nursing homes, unlike the plaintiff, complied with the reporting requirements of the statute and claimed no assessable income. Accordingly, the Department of Health initially had no reason to seek to enforce the assessment against those nursing homes. Further, although the Department of Health eventually came upon information which led it to believe that those nursing homes may have had assessable income for the period during which the nursing homes were not exempt from the assessment, the Department of Health has not yet determined if in fact such assessable income existed. In any event, "latitude must be accorded *886 authorities charged with making decisions related to legitimate law enforcement interests, at times permitting them to proceed with an unequal hand” (Matter of 303 W. 42nd St. Corp. v Klein, 46 NY2d 686, 694). Thus, certain violators maybe selected for prosecution out of a class of all known violators as a result of limited manpower or resources, in order to bring an appropriate case to test a new regulation or statute, or in view of an enforcement strategy directed only at serious violators (Matter of 303 W. 42nd St. Corp. v Klein, supra). Here, the plaintiff has failed to come forward with proof that the Department of Health’s enforcement of the statute against it and not against certain other nursing homes was based upon an impermissible standard such as race, religion or some other arbitrary classification (Matter of 303 W. 42nd St. Corp. v Klein, supra), rather than as the result of a legitimate enforcement strategy. Accordingly, the plaintiff has failed to overcome the presumption that the enforcement of laws is undertaken in good faith and without discrimination (Matter of 303 W. 42nd St. Corp. v Klein, supra).
Nor does the statute violate the Takings Clause of the Federal or State Constitution. Although there is no precise rule as to when there has been an unconstitutional taking, the following factors should be considered in determining whether a regulation results in a taking: (1) "[t]he economic impact of the regulation on the claimant”; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations”; and (3) "the character of the governmental action”. (Penn Cent. Transp. Co. v New York City, 438 US 104, 124; see also, Connolly v Pension Benefit Guar. Corp., 475 US 211, 224.) In the present case, the plaintiff has failed to produce any evidence that the imposition of the statutory assessment will result in a severe economic hardship. Further, there is no evidence that the assessment has interfered with any investment-backed expectations held by the plaintiff. Finally, insofar as the statutory assessment was part of a legislative package aimed at reducing the State budget deficit, it "adjust[ed] the benefits and burdens of economic life to promote the common good”, and does not constitute a taking requiring government compensation (Connolly v Pension Benefit Guar. Corp., supra, at 225). As recognized by the Supreme Court, "since the system of taxation has not yet been devised which will return precisely the same measure of benefit to each taxpayer or class of taxpayers, in proportion to payment made, as will be returned to every other individual or class paying a *887 given tax, it is not within either the disposition or power of this court to revise the necessarily complicated taxing system! ] of the State! ] for the purpose of attempting to produce what might be thought to be a more just distribution of the burdens of taxation than that arrived at by the state legislature! ]” (Dane v Jackson 256 US 589, 598-599).
42 USC § 1983 provides a remedy for the deprivation of Federal rights by any person or entity who acts under color of State law. Insofar as the plaintiff has failed to prevail on its constitutional claims, the plaintiff is not entitled to relief under 42 USC § 1983.
The plaintiff correctly contends that it is exempt from the franchise tax imposed by Tax Law § 209, which taxes the income of corporations doing business in the State (Tax Law § 209 [9]). That exemption, however, is limited to taxes imposed by article 9-A of the Tax Law and does not prohibit the taxation of the income of corporations under other laws of the State, including the Public Health Law. Accordingly, although the assessment imposed by Public Health Law § 2807-d is a tax on the plaintiff’s income, it is not an unlawful tax on a tax-exempt entity, since the plaintiff does not fall within any exemption to the assessment imposed by Public Health Law § 2807-d.
In view of the foregoing, the defendants’ motion for summary judgment dismissing the complaint is granted and the complaint is dismissed. The defendants’ motion for partial summary judgment on their counterclaims is also granted and the plaintiff is directed to comply with the reporting requirements of Public Health Law § 2807-d. The plaintiff’s cross motion is denied in its entirety.