*946 OPINION OF THE COURT
John A. Barone, J.
Procedural History
Defendant is charged in a criminal court information with two misdemeanor counts, assault in the third degree and harassment in the second degree. Mr. Barrow is accused of verbally harassing Ms. Ebony Scott and then striking her in the cheek with a closed fist.
Defendant was arraigned in Criminal Court, Bronx County, on July 16, 2004. The complaint was deemed an information at arraignment and transferred to Part AP-4 of the Criminal Court on September 13th and then transferred to the newly-created Criminal Division of Supreme Court after which defendant filed a motion to dismiss pursuant to CPL 170.30 (1) (f). Defendant alleged a jurisdictional or legal impediment to his potential conviction in Supreme Court on charges arising from the aforesaid criminal court information.
Legal Issue
The crux of the issue facing the court is whether CPL 10.20 and 210.05 bar this court from trying an offense which has not been presented to it in the form of an indictment or superior court information. If this is so, the further issue arises as to whether those provisions of the CPL would violate article VI, § 19 (a) of the New York State Constitution.
The Administrative Orders
In order to promote the administration of the Criminal Courts in Bronx County, New York State Chief Judge Kaye, in consultation with the Administrative Board of the Courts, and with the approval of the New York Court of Appeals, promulgated a new part 42 of the Rules of the Chief Judge (22 NYCRR). The new rule authorized the Chief Administrator of the Courts, in consultation and agreement with the Presiding Justice of the First Judicial Department, to establish a Criminal Division of Supreme Court, Bronx County. The rule was promulgated on September 8, 2004.
Thereafter, on September 21, 2004, the Chief Administrative Judge promulgated new part 142 of the Rules of the Chief Administrator of the Courts (22 NYCRR). Following that, on September 27, 2004, the Administrative Judge of the Criminal Division of Bronx Supreme Court issued an order. The result of all this was that on November 5, 2004 all cases in the Criminal Court of Bronx County containing either a felony or a misdemeanor were *947 transferred to the Criminal Division of Bronx Supreme Court. Essentially the Criminal Court, Bronx County, was merged in large part into Bronx Supreme Court. This means that defendants such as Mr. Brown will now have their cases adjudicated in Supreme Court. This is obviously a sharp break with past procedure.
Constitutional Powers of the Chief Judge and the Chief Administrative Judge
The first question is whether the Chief Administrative Judge has the general power to restructure the court system in Bronx County. The answer is yes. Article VI, § 28 of the NY State Constitution delegates the administration of the court system within the State of New York to the Chief Judge of the Court of Appeals. The Chief Judge, in turn, may appoint a Chief Administrator to act on her behalf as she may so direct him. In acting on behalf of the Chief Judge, the Chief Administrator shall have the powers and duties delegated to him by the Chief Judge and such additional powers as may be provided by law.
Does this last proviso require the Chief Administrator to seek enabling power from the Legislature to do so? Speaking once again in general terms, the answer is no. Only where constitutional language specifically refers to the need for implementing legislation is it necessary to seek additional authority from the Legislature. (Ghobashy v Sabra, 127 Misc 2d 915 [1985]; People v Levandowski, 190 Misc 2d 738 [2002].)
Jurisdiction of the Supreme Court under the New York State Constitution
The reason why the New York State Supreme Court remains a “supreme court” and has not become a “superior court” is that our State Constitution grants this court general original jurisdiction in all matters of law and equity. (NY Const, art VI, § 7 [a].) Thus, there is no constitutional impediment to the Supreme Court adjudicating misdemeanors. This, however, does not settle the issue before the court.
Prosecution of Misdemeanors under the CPL
New York’s Criminal Procedure Law regulates how misdemeanors are to be prosecuted in the courts of the state and in New York City in particular. CPL 10.10 designates the Supreme Court and the respective county courts a “superior court.” CPL 10.20 then states that superior courts have exclusive jurisdiction of all felonies and trial jurisdiction of misdemeanors concurrent with that of local criminal courts. Finally, CPL 210.05 *948 states that the only method of prosecuting an offense in superior court is by indictment or by superior court information.
The statutory framework is thus not readily reconciled with the orders promulgated by the Chief Judge and the Chief Administrative Judge with respect to Bronx Supreme Court. At first glance there appears also to be a conflict between the statute and the New York State constitutional grant of general original jurisdiction to the Supreme Court. In People v Darling (50 AD2d 1038 [1975]), the Appellate Division, Third Department, held that any attempt by the Legislature to abridge, qualify or limit the broad jurisdiction of the Supreme Court is unconstitutional. Even in those instances where concurrent jurisdiction is granted to another court, the Legislature cannot deprive the Supreme Court of its general jurisdiction. Darling relies heavily on the authority of Matter of Malloy (278 NY 429, 432 [1938]) in which the Court of Appeals stated that the Legislature cannot, by statute, deprive the Supreme Court “of one particle of its jurisdiction” although it may grant concurrent jurisdiction. (Busch Jewelry Co. v United Retail Empls. Union, 281 NY 150 [1939].)
On the authority of Malloy, Darling and Busch, the court in People v Turza (193 Misc 2d 432 [2002]) questioned the constitutionality of CPL 210.05. The decision by Justice Leis upheld the transfer of misdemeanors heard initially in Suffolk County District Court to the Supreme Court Integrated Domestic Violence Part of Suffolk County. This part had been established by the Chief Administrative Judge at the direction of the Chief Judge. Although Justice Leis ruled the transfer to be proper, he declined to rule that CPL 10.20, 10.30 and 210.05 were unconstitutional. He opined that the action of the Chief Administrative Judge was under authority granted by the Legislature and therefore the constitutional question need not be reached.
A different view of the issue was taken by Judge Modica in People v Trabazo (180 Misc 2d 961 [1999]). The court pointed out that historically the Supreme Court did not have trial jurisdiction over unindicted misdemeanors and that absent specific legislation it could not transfer a criminal action to itself unless pursuant to CPL 210.05.
The Constitutionality of CPL 210.05
In the opinion of this court there are good and proper reasons for not declaring CPL 210.05 unconstitutional.
In the first place CPL 210.05, while in one sense jurisdictional, in another sense only regulates the manner in which a misde-
*949 meaner or offense can be presented to Supreme Court. As the official commentator remarks, “although superior courts have jurisdiction to try misdemeanors and petty offenses, as well as felonies, this section bars prosecution of those offenses in a superior court where they are charged in an accusatory instrument other than an indictment or a superior court information.” (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 210.05, at 557.) Viewed in this light, there is no conflict between the statute and the Malloy, Darling and Busch cases.
The Darling case, in particular, is cited as authority for declaring the above-referenced CPL sections to be unconstitutional. This seems to be far from true. The case does not involve the interpretation of any of the cited statutes. A fortiori it does not even call into question the constitutionality of those statutes. Moreover, the case deals with an intervention by a Justice of the Supreme Court in Rensselaer County on oral application by an attorney for the defendant in a drunk driving case. The application was made at 4:00 a.m. at the Justice’s residence at a time when no court was in session in that bucolic venue. In these limited circumstances, the Appellate Division, Third Department, upheld jurisdiction but specifically stated that it did not condone the manner in which the case was handled. This fact-specific ruling hardly constitutes a precedent for declaring three separate acts of legislation to be unconstitutional.
Secondly, it must be remembered that CPL 210.05 is a relatively old statute. It was an original provision of the then newly adopted CPL (L 1970, ch 996, § 1). Moreover, the provision actually predated the CPL and was embodied in the Code of Criminal Procedure. (Code Crim Pro § 222, added by L 1941, ch 255, § 11.) Thus we are dealing with a 63-year-old statute enacted shortly after the Malloy and Busch decisions. Nevertheless, the constitutionality of the statute had not, until recently, been questioned. Apparently, the distinction drawn by the official commentator has been held to be persuasive.
In the third place, giving due deference to the intent of the Legislature, it can be argued that CPL 10.20, 10.30 and 210.05, rather than being unconstitutional, constitute a valid legislative determination as to the best way to fulfill its constitutional mandate. The Criminal Court of the City of New York is a constitutional court established by article VI, § 15 (a) of the State Constitution. The Criminal Court was given jurisdiction *950 over misdemeanors and other petty offenses. At the same time, article VI, § 15 (d) of the Constitution provides that the creation of the Criminal Court was not intended to impair the jurisdiction of the Supreme Court.
Given these two constitutional mandates, CPL 210.05, 10.20 and 10.30 must be viewed as a well thought out attempt by the Legislature to develop a modus operand!, clearly defining the respective roles of the criminal courts and the superior courts. The Presumption of Constitutionality
Where conflicting views are advanced as to the constitutionality of a statute, courts are required to exercise restraint and give deference to the legislative enactment. CLocal Govt. Assistance Corp. v Sales Tax Asset Receivable Corp., 2 NY3d 524 [2004].) Legislation carries the presumption of constitutionality and the party challenging its validity bears the burden of demonstrating beyond reasonable doubt that it is unconstitutional. (LaValle v Hayden, 98 NY2d 155 [2002].) It seems to this court that this presumption of constitutionality is especially strong when the court reviewing the legislation is a nisi prius court reviewing the legislation for the first time. Another Justice of the Supreme Court ruled that a court must avoid interpreting a statute in a way that would render it unconstitutional, if such construction can be avoided, and must uphold legislation if any uncertainty about its validity exists. (Charles T. Sitrin Health Care Ctr. v State of New York, 195 Misc 2d 824 [2003].)
Every presumption is to be made in favor of the constitutionality of a statute (.People v Bell, 306 NY 110 [1953]; Matter of Fay, 291 NY 198 [1943]). This is certainly the case when interpreting a long-standing statute such as CPL 210.05. The presumption is especially strong that such a statute is constitutional. (People v Anonymous, 56 Misc 2d 725 [1968]; see generally McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [b].)
Applying these principles of statutory interpretation to the case at hand, this court must construe CPL 10.20, 10.30 and 210.05 to be constitutional. They cannot be interpreted as placing unconstitutional limitations on the jurisdiction of the Supreme Court. Arguably, these statutes are not jurisdictional at all but merely regulate the manner of prosecuting misdemeanors and petty offenses before the Supreme Court. Moreover, they can be construed to be part of a legitimate legislative plan to delineate the functions of the constitutionally created Criminal Court of the City of New York and reconcile its operation with the constitutionally mandated jurisdiction of the *951 Supreme Court. Certainly under these circumstances a nisi prius court would be abusing its discretion were it to declare these statutes to be unconstitutional.
This court could act in a magisterial capacity to arraign this case and possibly decide pending motions pursuant to CPL 10.10 (3) (f) and 10.20 (3). However, 210.05 specifically limits the power of this court to finally adjudicate the case.
While it is true that there is an order of the Chief Administrative Judge to the contrary, such ruling cannot abrogate a statute duly enacted by the New York State Legislature unless this court could conclude that the statute is unconstitutional. For the reasons set forth above, this court cannot make such a determination. In this context the power of the Chief Administrative Judge to transfer an action to Supreme Court cannot be effected contrary to statutory constraints.
During the pendency of this motion, Justice Davidowitz of this court reached the opposite conclusion in a characteristically lucid opinion. For the reasons stated herein, I feel compelled to disagree with my learned colleague. I do not believe that the Chief Administrative Judge has the authority to deviate from what appears to me to be the clear intent of the Legislature in delineating the respective roles of the Criminal Court and the Supreme Court in New York City.
Limited Nature of the Ruling
The court must stress the limited nature of the ruling in this matter.
In this first place the decision herein clearly does not pertain to the issue which was the subject of the Turza and Trabazo cases — the creation of the integrated domestic violence parts. The issue therein is a grant of ancillary jurisdiction over related matters involving matrimonial law, family law and criminal law within the Supreme Court. The need to consolidate all matters involving the same or similar parties in one forum is arguably well within the power of the Chief Administrative Judge. (People v Gutierrez, 2001 NY Slip Op 40290[U] [2001].)
Secondly, this decision in no way calls into question the undoubted authority of the Chief Administrative Judge to administer and where appropriate restructure the courts of this state. Only one aspect of that plan is the subject of the decision and that aspect is hereby adjudicated ultra vires.
Finally, the question as to the constitutionality of the relevant sections of the CPL will obviously receive much fuller review at *952 the appellate level by a court specifically constituted to undertake a broad constitutional review of the statutes in question.
Ruling
For the reasons cited herein, the court concludes that, pursuant to CPL 10.20, 10.30 and 210.05, this case is improperly before the Supreme Court and should be returned to the assigning court for proper disposition.